## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**KAREN WATERMAN,**

        **Plaintiff,**          **CIVIL ACTION NO. 12-12384**

    **vs.**

                               **DISTRICT JUDGE DENISE PAGE HOOD**

**COMMISSIONER OF**             **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

### REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:** This Court recommends that Plaintiff's motion for summary judgment (docket no. 8) be denied, Defendant's motion for summary judgment (docket no.12) be granted, and Plaintiff's complaint be dismissed.

**II.**    **PROCEDURAL HISTORY:**

        Plaintiff protectively filed an application for a period of disability and disability insurance benefits on April 30, 2009, alleging disability beginning June 29, 2001. (TR 13). The onset date was later amended to January 9, 2005. (TR 20). The Social Security Administration denied benefits and Plaintiff filed a request for a *de novo* hearing. On August 26, 2010 Plaintiff appeared with counsel in Flint, Michigan and testified at a hearing held before Administrative Law Judge (ALJ) Nancy Lisewski. (TR 56-68). Vocational Expert (VE) Melody Henry also appeared and testified at the hearing. In a November 8, 2010 decision the ALJ found that Plaintiff was not entitled to disability benefits because she did not have a severe impairment or combination of impairments prior to the date last insured. The Appeals Council declined to review the ALJ's decision and

1

Plaintiff filed a timely complaint for judicial review. The parties filed cross motions for summary judgment which are currently before the Court.

## III.    PLAINTIFF'S TESTIMONY AND MEDICAL EVIDENCE

### A.    Plaintiff's Testimony

Plaintiff was fifty-seven years old on her amended alleged disability onset date. (TR 106). She completed high school and received vocational training as a secretary. (TR 136). She was employed as the city clerk/treasurer for the City of Pinconning from 1982 through June 2001. (TR 59, 141). Plaintiff testified that she has suffered from depression, anxiety, crying spells, daytime fatigue, paranoia, and social isolation since 2006. (TR 60-61). She stated that she has difficulty making decisions and she gets overwhelmed. She also testified that she has problems with memory, completing tasks, concentrating, following instructions, understanding, and getting along with others. (TR 62-63).

### B.    Medical Evidence

The medical evidence of record in this case is sparse. The record shows that Plaintiff received psychological counseling between January 4, 2006 and June 30, 2006. (TR 183-98). On initial evaluation Plaintiff presented as depressed, anxious, worried, and withdrawn. (TR 188, 193). She reported that she was taking Zoloft and she claimed to be enjoying her retirement. (TR 191). By the second session Plaintiff was feeling "significantly better" and the clinician noted that she was making good progress. During the third session Plaintiff reported that she was feeling "real good," she claimed that she was handling her frustrations well and she was enthused about life again. (TR 186). During her last counseling session on February 15, 2006, Plaintiff reported feeling frustrated over some family matters but claimed to be feeling better. (TR 185). The clinician noted that

2

Plaintiff was making good progress toward her treatment plan.  Plaintiff did not schedule any further counseling sessions after this date.  She was discharged from therapy with a diagnosis of depressive disorder and a GAF of 59-65.  (TR 183-84).

Records from Plaintiff's primary care physician, Dr. James Bodrie, show that Plaintiff reported a history of depression that was being controlled with Zoloft.  (TR 214).  She also reported a history of social phobia.  (TR 204).  On examination Dr. Bodrie reported that Plaintiff was generally alert, oriented times three, with no signs of agitation, anxiety, or depression.  (TR 206, 212, 214, 263).  In April 2009, after the date last insured, Dr. Bodrie documented that Plaintiff had been fighting depression for six months.  (TR 206).  On June 2, 2009 Plaintiff presented to Dr. Bodrie for follow-up of her depression and social phobia.  (TR 204).  She informed the doctor that she was applying for disability benefits related to her depression, anxiety, and functional difficulties. On examination the doctor noted that Plaintiff was alert and oriented times three with no signs of agitation, anxiety, and no more than mild depression, except that she was occasionally mildly tearful. (TR 204).  Dr. Bodrie reported that Plaintiff had good eye contact, she answered questions fully and appropriately, and she was pleasant although she appeared anxious and tearful.  (TR 199, 204).  He noted that while she was able to perform chores within the home, her social phobia markedly limited her out-of-home activities.  (TR 200).  He noted that Plaintiff had good insight, a normal stream of thought, and her sensorium and mental capabilities were within normal limits. (TR 200-02).  He diagnosed her with major depression with anxiety and assigned a GAF of 60.

Dr. Robert Newhouse completed a psychiatric review technique for the state disability determination service on July 10, 2009.  (TR 249-62).  The doctor concluded that there was insufficient evidence of a medically determinable impairment.

On August 23, 2010 Dr. Bodrie completed a mental medical source statement in which he checked boxes indicating that since May 10, 2007, after the date last insured, Plaintiff had been extremely limited in the following areas: (1) ability to relate and interact with supervisors and co-workers, (2) ability to understand, remember, and carry out an extensive variety of technical and/or complex job instructions, (3) ability to deal with the public, (4) ability to maintain concentration and attention for at least two hour increments, and (5) ability to withstand the stress and pressures associated with an eight hour workday and day-to-day work activity. (TR 270). He also documented that Plaintiff was markedly limited in her ability to handle funds.

## IV.   VOCATIONAL EXPERT TESTIMONY

The VE verified that Plaintiff's past work as a city or township clerk was classified as sedentary work with a specific vocational preparation (SVP) code of 5, her work as a government service treasurer was classified as sedentary work with an SVP of 8, and her work as an election worker/organizer was classified as sedentary to light work with an SVP of 4.[1] (TR 64-65).

The ALJ asked the VE to testify whether jobs were available for an individual with Plaintiff's age, education, and past work experience whose only job limitation was that she required a job with limited public contact. (TR 65). The VE testified that the individual would not be able to perform Plaintiff's past work, but could perform unskilled, medium exertional work in food

---

[1] "SVP is 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation'....The requisite time is ranked on a scale from one to nine, with nine representing the most time needed to learn a job." *Creech v. UNUM Life Ins. Co. of N. Am.*, 162 Fed. Appx. 445, 459 (6th Cir. 2006) (citing the Dictionary of Occupational Titles (DOT) app C ¶ II (4th Ed. 1991)). In the DOT, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9. SSR 00-4p, 2000 WL 1898704, at *3.

4

preparation, consisting of five Dictionary of Occupational Titles (DOT) codes; light, unskilled work as an office machine operator, consisting of eight DOT codes; and sedentary, unskilled work as a sorter, comprising a combined total of 13,525 jobs in the State of Michigan. (TR 65-66). The VE further testified that an individual employed in an unskilled entry level position could have no more than two unexcused absences in a thirty day period, not to exceed five unexcused absences in a twelve-month period. An individual who needed to sleep outside of the standard breaks and lunch period would not be able to maintain competitive employment. The VE also testified that work would be precluded if the individual's concentration was impacted to such a degree that she would be nonproductive approximately twenty percent of the time, or one day per week.

## V.      ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset of disability date through her date last insured of December 31, 2006, and suffered from the medically determinable impairments of depression and social phobia, she did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for twelve consecutive months. (TR 20-27). The ALJ found that because Plaintiff did not have a severe impairment or combination of impairments she was not under a disability as defined in the Social Security Act at any time from the alleged onset date through the date last insured.

## VI.     LAW AND ANALYSIS

### A.      Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether

5

the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**B.     Framework for Social Security Disability Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. she was not engaged in substantial gainful employment; and
2. she suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. she did not have the residual functional capacity to perform her past relevant work.

20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented her from doing her past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth

step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations omitted).

**C.     Analysis**

Plaintiff argues that the ALJ erred at step two of the sequential analysis by concluding that she did not suffer from a severe impairment. She argues that the medical records demonstrate that she sought mental health counseling from a social worker on January 4, 2005, she restarted her Zoloft prescription on December 6, 2005, and she sought treatment again on January 12, 2006, February 15, 2006, June 28, 2006, and August 23, 2010. She argues that she suffers from depression and social anxiety and she frequently has decreased energy, lack of motivation, anxiety, anhedonia, and irritability. Plaintiff contends that the social worker diagnosed her with depression, and when that diagnosis is coupled with the findings in Dr. Bodrie's medical source statement, there is ample evidence that she is disabled. She further claims that her depression, anxiety, and social phobia constitute a combination of impairments that have caused her to be unable to perform basic work-related activities for at least twelve months.

At step two of the sequential analysis Plaintiff was required to show that she suffered from a severe impairment. An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R.

§ 404.1520(c). The Sixth Circuit court has determined that the step two requirement serves as a "de minimus" threshold hurdle in the disability process. *Higgs v. Bowen*, 880 F.2d 860, 862-63 (6th Cir. 1988). The inquiry at step two functions as an "administrative convenience to screen out claims that are totally groundless" from a medical perspective. *Id.* at 863. An impairment may be considered not severe only if the impairment constitutes a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." *Farris v. Sec'y of Health & Human Servs.,* 773 F.2d 85, 90 (6th Cir. 1985) (citation and internal quotation marks omitted). "Under this standard, the question ... is whether there is substantial evidence in the record supporting the ALJ's finding that [plaintiff] has only a "slight' impairment that does not affect her ability to work." *Id.*

> The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs. Examples of these are walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting.

SSR 85-28. Medical evidence after the date last insured is relevant only to the extent it indicates the claimant's condition prior to the date last insured. *Higgs*, 880 F.2d at 863.

The ALJ concluded that Plaintiff had not met her burden of showing that she had disabling impairments that precluded her from performing basic work activities prior to her date last insured. In the course of finding that Plaintiff had no severe impairments, the ALJ recognized that Plaintiff had the medically determinable impairments of depression and social phobia. (TR 22). The ALJ then discussed in detail the medical evidence pertaining to Plaintiff's mental conditions. The ALJ noted that Plaintiff sought treatment from a social worker on January 4, 2005 for symptoms of

8

decreased energy, lack of motivation, anxiety, anhedonia, and irritability. She noted that the next treatment record was from January 2006, a full year after the previously cited treatment record and reasonably concluded that Plaintiff must not have been suffering from severe and debilitating symptoms if she waited a full year to seek follow-up treatment.

The ALJ recognized that treatment records from mental health counseling dated January 4, 2006 through June 30, 2006 were fairly benign. In fact, in just a few short counseling sessions Plaintiff showed positive improvement in her mental state and ended her counseling sessions.

Next, the ALJ considered treatment records from Plaintiff's primary care physician. The ALJ noted that Plaintiff mostly sought treatment from Dr. Bodrie for reasons unrelated to her depression or social phobia. She also noted that Dr. Bodrie prescribed only routine and conservative treatment for Plaintiff's depression. The ALJ assessed the severity of Plaintiff's medically determinable mental impairments in terms of the paragraph "B" criteria, citing record evidence to support her findings that Plaintiff had no limitations in her activities of daily living, mild limitations in social functioning, mild limitations in concentration, persistence, or pace, and no episodes of decompensation. Additionally, the ALJ recognized that Dr. Bodrie's medical source statement was completed years after the date last insured and indicated that Plaintiff's severe limitations did not exist until after the date last insured.

After thoroughly reviewing the medical evidence, including treatment records that post-dated her date last insured, the ALJ concluded that Plaintiff did not have any severe impairments. The undersigned concludes that the ALJ's step two determination is supported by substantial evidence on the record.

9

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: March 20, 2013               s/ Mona K. Majzoub_____
                                    MONA K. MAJZOUB
                                    UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel

of Record on this date.

Dated: March 20, 2013                              s/ Lisa C. Bartlett
                                                   Case Manager